**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Sanja Tomasevic,

                Plaintiff,

vs.

Arizona State University, et al.,

                Defendants.

No.  CV-25-01611-PHX-SPL

**ORDER**

Before the Court is Defendants Arizona State University and Arizona Board of Regents' Motion to Dismiss the Second Amended Complaint (Doc. 20), Plaintiff Sanja Tomasevic's Response (Doc. 21), and Defendants' Reply (Doc. 23). For the following reasons, the Motion is granted in part and denied in part.[1]

## I.    BACKGROUND

On May 12, 2025, Plaintiff Sanja Tomasevic ("Plaintiff") filed this action against Arizona State University ("ASU") and the Board of Regents (together, "Defendants"). (Doc. 1). Since initiating this action, Plaintiff has amended her complaint twice. (*See* Docs. 10, 17). In the Second Amended Complaint ("SAC"), the operative complaint in this case, Plaintiff brings several claims under Title VII, alleging that she suffered several forms of gender discrimination as the head coach of the ASU volleyball team. (Doc. 17 at 41–43).

---

[1]    Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Plaintiff played volleyball for twenty-three years at the collegiate and professional levels before becoming a coach. (*Id.* at 102–114). Plaintiff began working with the volleyball team at ASU in 2016 and was eventually hired as head coach. (*Id.* at 21, ¶¶ 115, 123). In 2020–2021, ASU conducted two investigations into Plaintiff in response to complaints from a player who left the team. (*Id.* at 26, ¶¶ 166–179). After the investigations concluded with no findings of wrongdoing, Plaintiff was asked to meet with several Associate Athletic Directors. (*Id.* at 27, ¶ 178). During the meeting, they gave her "a document with pointers on how to communicate as a coach," which included advice that Plaintiff alleges "was the direct result of gender stereotypes." (*Id.* ¶¶ 181–85). Plaintiff was also told to be aware that she is "intimidating" and "looks angry when she crosses her arms while coaching." (*Id.* at 27–28, ¶¶ 186–88). After that meeting, Plaintiff was informed that she could not suggest that her players return to campus early to prepare for the season. (*Id.* ¶¶ 191–92). She alleges that male coaches are allowed to require or suggest their players return early from breaks. (*Id.* ¶ 193).

The SAC continues to describe challenges that Plaintiff faced as a coach, including with players who were unable to compete due to family and health issues, a player "who could be difficult to work with" and was ultimately kicked off the team, and players taking issue with Plaintiff's coaching strategies. (*Id.* at 29–31).[2] At one point, Plaintiff alleges that an Associate Athletic Director suggested Plaintiff use the transfer portal to allow players to leave the team and bring in new players. (*Id.* at 32 ¶ 246). Seven volleyball players "entered the transfer portal that year" and "stated that their reason for leaving was due to a 'toxic/hostile culture' and mental health." (*Id.* ¶¶ 251–53). Shortly after, Plaintiff was terminated, with the administration stating that "they expected more from her" and "didn't like the word 'toxic' being used by the players entering the transfer portal." (*Id.* at 33, ¶¶ 259–60). Plaintiff alleges that "[t]he male who replaced her as head volleyball coach at

---

[2]    In addition to describing the events that led up to Plaintiff's termination, the SAC details at great length the "illegal segregation" of female coaches in college athletics (*id.* at 3–11) and how gendered socialization results in more concerns of emotional and physical risk to female athletes than male athletes. (*Id.* at 11–15).

2

ASU had never been a head coach before and had no experience playing volleyball." (*Id.* at 35, ¶ 280). Yet, as Plaintiff alleges, the new head coach was hired at a salary of $190,000, while Plaintiff's salary was $160,000 at the time she was terminated. (*Id.* at ¶ 281).

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, "all allegations of material fact" in the complaint "are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).

## III.   DISCUSSION

In the first count of the SAC, Plaintiff brings four claims under Title VII: gender discrimination, hostile work environment, pay discrimination, and retaliation. (Doc. 17 at 41–42). In the second count, Plaintiff brings a claim for "Negligent Discrimination in Violation of Title VII." (*Id.* at 42–43). For the following reasons, all claims, except for the claims for gender discrimination and pay discrimination, will be dismissed.

### A. Exhaustion

Defendants first argue that Plaintiff failed to exhaust her administrative remedies as to the claims of (1) retaliation, (2) hostile work environment, (3) disparate treatment, and (4) negligent discrimination. (Doc. 20 at 5). Defendants assert that these claims should therefore be dismissed. (*Id.* at 6).

As a prerequisite to bringing a Title VII claim in district Court, a plaintiff must exhaust administrative remedies through the EEOC. 42 U.S.C. § 2000e-16(c); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001). "Under the Title VII statutory and

regulatory scheme, a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct, and then, if the matter is not resolved, the employee may submit a formal administrative complaint." *Id.* at 708. This requirement, though "not a jurisdictional prescription," is mandatory. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019). To meet the exhaustion requirement, the allegations in a complaint must be "like or reasonably related to the allegations contained in the EEOC charge." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (internal quotations and citations omitted). The court's inquiry centers on "the scope of an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotations and citation omitted). Courts may "consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *abrogated on other grounds by Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541 (2019).

In Plaintiff's EEOC charge,[3] she checked the boxes for discrimination based on "sex" and "retaliation" with the earliest date December 21, 2016 and latest date December 9, 2022. (Doc. 23-1 at 2). Plaintiff asserted that her contract was terminated because of gender stereotypes. (*Id.*). Plaintiff stated that athletes' complaints that the team was "toxic" rested on gender stereotypes, because as a female coach, she was "held to a different standard in terms of the coaching methods I am permitted, or how my voice, my tone, or my physical presence is interpreted by both athletes and administration." (*Id.*). Further, she explained that the inequality in resources allocated for women's sports and the double standards in expectations placed upon male and female coaches all underscore that "gender was a motivating factor in the termination of my contract." (*Id.*). Finally, she asserted that

---

[3] The Court takes judicial notice of Plaintiff's EEOC charge of discrimination. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (A court may consider "matters of judicial notice . . . without converting the motion to dismiss into a motion for summary judgment."); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (explaining that a court "may take judicial notice of records and reports of administrative bodies") (internal quotations and citation omitted).

her replacement, who is a man, was less qualified but received a higher salary. (*Id.*).

Plaintiff's claims for retaliation and disparate treatment were exhausted. First, Plaintiff checked the box for "retaliation," and discussed in her charge that she was terminated from her position at ASU. (*See id.*). Though the charge does not include any facts specific to the retaliation claim, retaliation still could have fallen within the scope of the investigation. Plaintiff's charge also includes a sex discrimination claim and states in part: "There were males who had records that were similar or worse than mine and who were using similar or more aggressive coaching methods who were not fired and who remain fully supported by the university." (*Id.*).  Given this assertion and other references to "gender stereotypes" and "double standards," it is reasonable that a disparate treatment claim would fall within the scope of the EEOC's investigation. (*See id.*). Both the retaliation and disparate treatment claims are reasonably related to the allegations in the EEOC charge and were therefore exhausted. *See Sosa*, 920 F.2d at 1456.

However, the hostile work environment claim was not exhausted because it is not reasonably related to the information included in the charge. The EEOC charge focuses on Plaintiff's termination from her position as head coach as well as "gender discrimination" and "double standards" within collegiate athletic programs. (*See* Doc. 23-1 at 2). The charge does not refer to any physical or verbal conduct of a harassing nature. *See Kwesele v. King Cnty.*, No. 2:17-cv-1426-RAJ, 2019 WL 1922928, at *1 (W.D. Wash. 2019) ("Hostile work environment claims are distinct claims, with distinct elements, and must be analyzed separately from discrimination and retaliation claims."); *Seredina v. W.L. Gore & Assocs. Inc.*, No. CV-24-08031-PCT-SMM, 2025 WL 2257538, at *5 (D. Ariz. Aug. 7, 2025) (finding that Plaintiff exhausted a claim under the Americans with Disabilities Act for denial of reasonable accommodations but not for hostile work environment). In addition, Plaintiff wrote in the EEOC charge: "I seek to bring both a gender discrimination claim, a pay discrimination and an equal pay claim." (Doc. 23-1 at 2). There is no mention of a hostile work environment claim. (*See id.*). Even viewing the EEOC charge "with utmost liberality," *B.K.B.*, 276 F.3d at 1100, the Court does not find that a hostile work

environment claim is reasonably related. *See Sosa*, 920 F.2d at 1456. Because Plaintiff did not exhaust the hostile work environment claim, the Court will dismiss it. Finally, Plaintiff has failed to provide any authority supporting the negligent discrimination claim, so the Court cannot determine whether it was exhausted, and will address it later in this Order.

### B. Timeliness

Next, Defendants argue that Plaintiff's gender discrimination claim contains untimely allegations.[4] (Doc. 20 at 6–7). Defendants characterize Plaintiff's gender discrimination claim as a disparate treatment claim based on three discrete acts: (1) the coaching instructions and advice she received in a meeting in 2021; (2) the inability to ask the athletes to return to campus early to begin training in summer 2021 and 2022; and (3) her termination on December 8, 2022. (*Id.* at 6). Defendants argue that claims based on the first two acts are time-barred, because they occurred over 300 days before Plaintiff filed her EEOC charge on August 8, 2023.[5] (*Id.* at 6–7). In response, Plaintiff argues that the hostile work environment claim is timely under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117–18 (2002) because "an act contributing to the claim occurs within the filing period." (Doc. 21 at 9–10). Plaintiff also argues that the claims are timely because the "retaliation, hostile work environment, and disparate treatment claims are not new theories, but natural extensions of the same factual core presented to the EEOC." (*Id.* at 10).

To determine whether claims under Title VII are timely, courts distinguish between "discrete discriminatory acts and hostile work environment claims." *Morgan*, 536 U.S. at 110. For discriminatory acts, a party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.* In the decision in *Morgan*, the

---

[4] Defendants also argue that Plaintiff's hostile work environment claim is untimely. (Doc. 20 at 7). Because the hostile work environment claim was not exhausted, the Court need not consider its timeliness.

[5] Plaintiff states that she filed her EEOC charge on August 9, 2023. (Doc. 21 at 9). Plaintiff signed her EEOC charge and wrote the date as August 8, 2023. (Doc. 23-1 at 2). However, the discrepancy in date does not make a difference in the timeliness analysis here.

Supreme Court rejected the argument that alleging a discriminatory practice "converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* at 111. On the other hand, for hostile work environment claims, "the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." (*Id.* at 118).

Here, Plaintiff's argument that the disparate treatment claims are "natural extensions of the same factual core" fails. *See Brandon Robinson v. Chas Roberts Air Conditioning Inc.*, No. CV-24-02774-PHX-SHD, 2026 WL 632314, at *5 (D. Ariz. Mar. 6, 2026) ("[Plaintiff] attempts to avoid this result by arguing that he has alleged a 'pattern of discriminatory actions' and thus, that the claims are not time barred. But . . . the theory of continuing pattern or practice, appl[ies] only to hostile work environment claims, which [Plaintiff] has not alleged.") (citations omitted). Instead, the discriminatory acts stand on their own for the purposes of the timeliness analysis. *Morgan*, 536 U.S. at 111. Plaintiff's termination in December 2022 falls within the 300-day period and is therefore actionable. (*See* Doc. 23-1 at 2). However, any claims based on the 2021 meeting or Plaintiff's inability to require the athletes on her team to return to campus early in summer 2021 and 2022 are time-barred as they occurred before October 12, 2022, the date 300 days before she filed her EEOC charge. Although the claims are barred, Plaintiff may still "[use] the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

### C. Gender Discrimination

In her first cause of action, Plaintiff alleges gender discrimination under Title VII. (Doc. 17 at 41.) Under Title VII, it is unlawful for an employer to discriminate against someone based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a discrimination claim under Title VII, a plaintiff must prove: "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff."

7

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). However, plaintiffs are not required to plead a prima facie case of discrimination at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). There must be "sufficient, nonconclusory allegations plausibly linking the [adverse] action to [the alleged] discrimination." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

Defendants do not dispute that Plaintiff has sufficiently established the first three elements. (Doc. 20 at 11). Instead, Defendants argue that Plaintiff has failed to plead sufficient facts to establish the fourth element and show that a valid comparator was treated differently than Plaintiff. (*Id.*). In the SAC, Plaintiff includes several allegations under the heading "Male Comparators Treated More Favorably" and alleges that "[e]very male coach at ASU is a valid comparator to Coach Tomasevic" because they coach aggressively or receive complaints from athletes without being terminated. (Doc. 17 at 37–40). Defendants argue that "none of the male coaches listed in the SAC are valid comparators" because there are no facts showing they are similar to Plaintiff "in all material respects." (*Id.* at 11–12) (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). But Plaintiff need not make a prima facie case at this stage and prove that the other coaches are valid comparators. *Swierkiewicz,* 534 U.S. at 510–11. Plaintiff's allegations contain sufficient facts that, if accepted as true, state a plausible claim for gender discrimination based on her termination. Therefore, the Court will not dismiss this claim.

### D. Pay Discrimination

Defendants argue that Plaintiff has failed to state a claim for pay discrimination because she has not pled facts showing a valid comparator nor has she "pled any direct or circumstantial evidence that connects gender to Defendant's (sic) setting of her pay." (Doc. 20 at 13). Plaintiff argues in response that the SAC alleges "ASU replaced her with a less qualified male coach who was paid $30,000 more per year for the identical position" and

that this is pay discrimination under both Title VII and the Equal Pay Act.[6] (Doc. 21 at 17).

In the SAC, Plaintiff alleges she "was paid less than her male, less-experienced replacement" and her replacement's "starting pay as head coach was approximately $190,000. Coach Tomasevic was making approximately $160,000 when she was terminated." (Doc. 17 at 35 ¶¶ 280–81). Under Rule 8(a), a complaint must only include a "short and plain statement of the claim showing that the pleader is entitled to relief." *See also Swierkiewicz,* 534 U.S. at 510–11. Again, the Court agrees with Plaintiff that she has pled sufficient facts to establish a pay discrimination claim at this stage.

### E. Retaliation

To state a claim for retaliation, Plaintiff must show that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) the two are causally linked. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). Defendants argue that Plaintiff failed to plead that she engaged in a protected activity. (Doc. 20 at 10.) The Court agrees. Protected activities may include "the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in any other activity intended to 'oppose[]' an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e–3(a)). Plaintiff has not pled any facts alleging that she engaged in a protected activity, nor has she pled that doing so caused her to be terminated. (*See* Doc. 17). Therefore, Plaintiff has failed to state a claim for retaliation under Title VII.

### F. Negligent Discrimination

Plaintiff's final ground for relief is "Negligent Discrimination in violation of Title VII," Count Two of the Complaint. (Doc. 17 at 42). Defendants argue that this claim is not actionable under Title VII because disparate treatment requires a showing of intent. (Doc.

---

[6] The SAC does not state a claim under the Equal Pay Act. (*See* Doc. 17). "However, when a Title VII claimant contends that she has been denied equal pay for substantially equal work . . . Equal Pay Act standards apply." *Foster v. Arcata Assocs.*, 772 F.2d 1453, 1465 (9th Cir. 1985), *overruled on other grounds as recognized in Opara v. Yellen*, 57 F.4th 709, 722 n. 10 (9th Cir. 2023) (citations omitted).

20 at 13). This claim fails because Plaintiff has not shown a cognizable legal theory. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). Without citing to any law or authority, Plaintiff asserts that "Defendant has a duty imposed by Title VII to avoid the foreseeable risk of gender stereotyping." (Doc. 1 at 42, ¶ 335). The Complaint seems to suggest that Defendants breached this alleged duty. (*See id.* at 42–43). In Response to the Motion to Dismiss, Plaintiff argues that "courts and commentators have long acknowledged that negligence principles operate within the statute." (Doc. 21 at 18). Plaintiff cites to a law review article and several United States Supreme Court cases which include language that Plaintiff argues suggests of a duty of care. (*Id.*). But Plaintiff has not provided any controlling or even persuasive authority to show that this is an actionable claim under the law. (*See id.*). Thus, the negligent discrimination claim will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendants' Motion to Dismiss. The Court will deny the Motion as to the claims for gender discrimination based on Plaintiff's termination and pay discrimination under Title VII because Plaintiff has pled sufficient facts to support those claims. The Court will grant the Motion to Dismiss the remaining three claims for hostile work environment, retaliation, and negligent discrimination.

A district court should grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *see* Fed. R. Civ. P. 15(a)(2). Because additional facts could not cure Plaintiff's claims for hostile work environment and negligent discrimination under Title VII, the Court will dismiss those claims without leave to amend. However, leave to amend is appropriate as to the retaliation claim. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Plaintiff will

be granted leave to amend as to the retaliation claim only. Should Plaintiff wish to make any further amendments not identified throughout this Order, Plaintiff must file a motion for leave to amend in accordance with FRCP 15(a)(2) and LRCiv 15.1.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Second Amended Complaint (Doc. 20) is **granted in part and denied in part** consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count One for hostile work environment and the claim in Count Two for negligent discrimination are **dismissed with prejudice and without leave to amend**.

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count One for retaliation is **dismissed without prejudice and with leave to amend**. Plaintiff may file a Third Amended Complaint, if she so chooses, by **April 23, 2026**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **denied** as to the claims in Count One for gender discrimination based on her termination and pay discrimination. If Plaintiff elects not to file a Third Amended Complaint, the action will proceed as to those claims only.

Dated this 9th day of April, 2026.

Honorable Steven P. Logan
United States District Judge

11